Barbara OLSEN, Appellant,

v.

ROYAL METALS CORPORATION,
Appellee.

No. 24325.

United States Court of Appeals
Fifth Circuit.

Jan. 3, 1968.

Rehearing Denied April 8, 1968.

William J. Gillespie, Jack McClendon, Gillespie & McClendon, Lubbock, Tex., for appellant.

Tom S. Milam, Crenshaw, Dupree & Milam, Lubbock, Tex., for appellee.

Before BROWN, Chief Judge, and BELL and THORNBERRY, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

Appellant is a surgical nurse. Appellee is a manufacturer of hospital beds. Appellant's Achilles' tendon was cut when her heel was struck by the lower crossbar [to which the front wheels were affixed] of a hospital bed while it was being pushed by at least two doctors in Methodist Hospital, Lubbock, Texas, where appellant was employed. The bed was being used to move a patient from the operating room to the intensive care ward. Appellant was pulling the bed with both hands while walking backwards. She was at the opposite or lead end of the bed from the doctors. She changed her direction as the bed was being pushed through a door with the result that she was pulling the bed with only one hand while her back was to the bed and thereupon the bed was pushed into her heel as she was taking a step.

She was satisfied to file suit against appellee alone on the theories of express warranty, implied warranty and negligence. The express warranty claim was abandoned; the negligence claim was lost by virtue of a jury verdict from which no appeal is taken;[1] and the case is here on the alleged failure of the District Court to submit her non-negligence theory of the breach by appellee of an implied warranty running from appellee to her. Appellee, in answer, alleges first that the theory was submitted to the jury; and second, if not, that the evidence was such as to demand a verdict for it on the theory as a matter of law. We hold that the implied warranty claim was not submitted to the jury; that the facts relating to it made a question for the jury, and reverse.

It is clear that the District Court refused to submit the breach of implied warranty theory to the jury. It is also clear that appellee was the manufacturer of the bed in question; that it was sold by appellee through a dealer to the hospital; that there was no change thereafter in its condition; that it struck appellant's heel. The underside of the crossbar was in the form of a rather sharp edge and one question left was whether it was defective and unreasonably dangerous to a user.

Although the District Court refused to submit the theory because of lack of privity between the manufacturer and appellant, appellee has never taken the position that privity was necessary.

Whether the doctrine of strict liability pertains in Texas and obviates the necessity of showing privity in such circumstances is a question of Texas law in this diversity case. We recently forecast that Texas would subject a manufacturer to strict liability where a user is injured by a defective product, unreasonably dangerous to the user, even when there is a lack of privity between the user and manufacturer. See Putman v. Erie City Manufacturing Company, 5 Cir., 1964, 338 F.2d 911. Our forecast was based on a logical extension of the strict liability doctrine expressed in Decker & Sons, Inc. v. Capps, 1942, 139 Tex. 623, 164 S.W.2d 828, 835, 142 A.L.R. 1479, a case involving food for human consumption.

The question, however, is no longer one of a forecast since the Supreme Court of Texas, subsequent to the trial of the case before us, extended the strict liability doctrine to all defective products. The court adopted the

[1]. Appellant states in her second reply brief that she "* * * does not deny that a case was probably not established by her under a negligence theory."

view of the American Law Institute as it is expressed in § 402A of the Restatement of the Law of Torts (2d Ed.).[2] See McKisson v. Sales Affiliates, Inc., S. Ct., Tex., 1967, 416 S.W.2d 787. Under this doctrine the seller may be liable to a user or consumer even though he has exercised all possible care in the manufacture of the product; assuming no change in condition a defective condition unreasonably dangerous to the user or consumer, the necessary proximate cause, and the use in the intended manner. The court in that case, and simultaneously in another case, also adopted the Restatement view as to contributory negligence. Shamrock Fuel & Oil Sales Co., Inc. v. Tunks, District Judge, S.Ct., Tex., 1967, 416 S.W.2d 779 quoting Comment n. Restat. § 402A, supra. The court said in *Shamrock* that the user might be barred from recovery when, after actual discovery of the dangerous propensities of an article or product, he persists in its use and thus assumes the risk of injury by its continued use. The court left the question of a user's conduct open to some extent as follows:

" * * * This voluntary exposure to risk may not be the only type of action or failure to act that may bar a plaintiff's recovery and we do not mean to infer that it is, but these defenses, voluntary exposure and such others as may be recognized should be submitted specifically and not under the formula embraced by the contributory negligence issues employed in this case. Such form of submission embraces a failure to discover a defect or to guard against the possibility of

its existence which under the greater weight of authority is not a defense to the action. * * * (id. at 785)

 The sum of the situation is that privity of contract is no longer necessary for the maintenance in Texas of an action on implied warranty by a user against a manufacturer. It need only be alleged and proven, to make out a prima facie case in the circumstances here, that appellee manufactured the bed in question, that it was in a defective condition which was unreasonably dangerous to the user, that it reached the user without substantial change in condition, and that the injury to appellant occurred during its intended use.

 Since there is to be another trial, good judicial administration would seem to indicate some consideration of what constitutes a defective condition unreasonably dangerous to the user in this particular case. In Helene Curtis Industries, Inc. v. Pruitt, 5 Cir., 1967, 385 F.2d 841 [dated October 20, 1967], we made the following statement which is equally applicable here:

"Demanding that the defect render the product unreasonably dangerous reflects a realization that many products * * * have both utility and danger. * * * Since, in the instant case, there was no evidence of any miscarriage in the production and no foreign substance was found in either product [cosmetics], we are confronted with what has been termed a design problem: The product was exactly as intended and yet harm still occurred. * * * For the design to be unreasonably dangerous, it must be so dan-

---

**2.** § 402 A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial

change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

gerous that a reasonable man would not sell the product if he knew the risks involved. * * * "

The problem here is one of design. Thus one of the questions on remand will be whether the design of the bed utilizing such a crossbar was so unreasonably dangerous that a reasonable man would not sell a bed of the kind in question if he knew the risks involved. Whether appellee has knowledge of the risks involved is inextricably related to another question: Intended use.

■ This leaves for decision the question whether the failure to submit the claim based on a breach of the implied warranty to the jury was rendered harmless by the state of the evidence being such that appellee was entitled to an instructed verdict. This aspect of the case involves three defenses. One, whether appellant was barred by contributory negligence has been answered, supra. Contributory negligence is no longer a defense in such a case. Two, there was ample evidence to make a jury question on the defense of assumption of risk. The other, that the injury did not occur during an intended use of the product requires some elaboration.

In our recent decision of Helene Curtis Industries, Inc. v. Pruitt, supra, we pointed to the test to be employed in determining the nature and quantum of proof necessary to make a jury question in a defective product implied warranty case under the strict liability doctrine. A jury verdict for the user was set aside with the statement that the doctrine of strict liability alone does not prove a plaintiff's case. Even where there is proof of a product in a defective condition which is unreasonably dangerous to a user, no liability ensues unless the injury occurred during an intended use of the product. We said that a manufac-

turer " * * * has the right to expect that his product will be used in the normal and customary fashion." We held as a matter of law that the injury did not occur during an intended use of the products there involved.

■ Here there was substantial evidence that the bed in question was sold as a part of a hospital room suite and that it was not intended for use in conveying patients from the operating room to the intensive care ward. It cost a great deal less than a stretcher type bed customarily used for such purposes. It was designed differently. The difference in design would have avoided the injury. Nevertheless, there was evidence that beds of the type in question were used to move patients in such manner not only in the Methodist Hospital but at other hospitals and that appellee had knowledge of this use. Appellee's position was that hospitals so using its beds were taking a calculated risk and that it could not prevent such use. We think, in the final analysis, that this presented a question for the jury on the issue of intended use. We cannot hold as a matter of law that the injury did not occur during an intended use.[3]

The case must be reversed for a trial on the claim of breach of an implied warranty. This will involve the questions of defective design, intended use, proximate cause and the conduct of appellant with relation to the injury in the context of assumption of risk. The District Court will have the advantage of the enlightenment now available from the Texas Supreme Court decisions, supra, McKisson v. Sales Affiliates, Inc., and Shamrock Fuel & Oil Sales Co., Inc. v. Tunks, District Judge.

Reversed and remanded for further proceedings not inconsistent herewith.

3. Appellee relies on a group of cases holding that manufacturers of automobiles and like products are not held to an accident proof standard. Cf. Evans v. General Motors Corporation, 7 Cir., 1966, 359 F.2d 822; and Gossett v. Chrysler Corporation, 6 Cir., 1966, 359 F.2d 84. They are inapposite. They turn on the absence of proof that the design of the automobiles rendered them unfit for their intended use.