Joe GARCIA et al., Appellants,

v.

SKY CLIMBER, INC., Appellee.

No. 15734.

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 17, 1971.

Rehearing Denied Sept. 9, 1971.

Brown, Kronzer, Abraham, Watkins & Steely, John M. O'Quinn, W. James Kron-

zer, Bates & Jones, Harry Jones, James H. Campbell, Houston, for Joe Garcia, Francisco Salinas and Guadalupe Salinas.

Max Jennings, Clawson & Jennings, Houston, of counsel for Texas Concrete Silo Co.

Finis E. Cowan, Houston, Baker & Botts, Houston, of counsel, for appellee.

COLEMAN, Justice.

Personal injury case. Appellants, Joe Garcia, Francisco Salinas, and Guadalupe Salinas, appeal from a take nothing judgment rendered below, pursuant to a jury's answers to special issues. Appellant Texas Concrete Silo Company appeals from the judgment awarding $31,799.98 for costs and expenses incurred by appellee, Sky Climber, in connection with the defense of the suit.

The facts surrounding the accident in question are largely undisputed. On July 24, 1967, Garcia and Felipe Salinas were employed by Silo Builders, Inc. Silo Builders was in the business of erecting concrete silos for storage. They used precast concrete blocks for the silos. Garcia and Salinas were sealing the joints between the blocks of concrete. The silo they were working on was approximately fifty-five feet tall and eighteen feet in diameter.

In order to reach the higher blocks, Garcia and Salinas were using a scaffold equipped with an electric motor driven hoisting mechanism. The scaffold belonged to Silo Builders, but the mechanism belonged to Sky Climbers and was leased to Silo Builders. The device is attached to the scaffolding and rides up and down a wire rope which is attached to the top of the silo by a "sky hook". The wire rope is threaded through the sky climber device when it is on the ground. The scaffold, with sky climber attached, moves up and down the length of the rope. There is a handle which activates the device up or down by turning the drum on which the wire rope is wound. When the handle

is in the "off" position there is a gear lock which keeps the drum from turning.

Garcia and Salinas were on the last "drop" of the last silo. Each silo usually takes four or five "drops", complete trips from top to bottom, to seal all cracks. Each "drop" requires that the sky hook at the top of the silo be moved. They had just loaded their scaffold with "mud" (sealant), paint and water and proceeded to the top. They had finished the top level and were preparing to lower the scaffold when Garcia testified he heard a popping noise and looked over to Salinas who was operating the handle to move the scaffold down. He saw the wire rope unravel before his eyes. Just before it crashed to the concrete floor below he instinctively grabbed a roof strut. Salinas fell with the scaffold and Garcia was unable to hold on long enough to be rescued, and he fell to the floor also. Salinas died some three months later, and Garcia was severely injured.

Kenneth Perry, foreman of the job, testified that he had threaded the wire rope onto the sky climber device that morning. He carefully checked the wire rope for kinks and worn spots and found none. He testified that the cable was relatively new, that he had put it on no more than a week before. Normally a cable will last three weeks to a month before it has to be replaced. It is exceedingly dangerous to use a damaged rope in a sky climber device. Kinks, "bird-cages" and "fish hooks" will cause the device to jam, or will come apart and break the rope. Each time that Garcia and Salinas would move up the rope on their scaffold, they would visually inspect the rope and run their hands along it to check for defects. The device moves at between ten and twenty feet per minute, depending on the load.

The wire rope was introduced into evidence at the trial. There it was examined by appellee's witnesses and several defects were pointed out. Some of the damaged areas were caused by the scaffold

falling onto the cable, but others were not attributed to this cause, indicating that the defects were present when the accident occurred.

Appellants Garcia and Salinas sued on alternative theories. On the one hand they claimed that the rope was in good condition and not damaged, but somehow became caught in the hoisting mechanism and was torn apart. Alternatively, appellants sued on a strict liability theory of design defect. Appellants' expert witness testified that a fail-safe inertia type braking system could have been designed to prevent accidents such as this, regardless of the condition of the wire cable. Appellee strongly controverted this theory, contending that the contemplated safety device was impractical, and not feasible, that it would not have prevented this accident, and that other manufacturers of similar equipment had no such similar safety device.

The jury found, in answer to special issues, that (1) the sky climber device was not unfit for its intended use, that (3) the design of the device was defective, (4) that such design was negligence, but (5) not a proximate cause of the accident, that (6) the failure to equip the device with a fail-safe inertia type brake was not negligence, that (7A) the wire rope used by appellants was damaged, that (8) the failure of Sky Climber, Inc. to warn appellants not to use defective rope was negligence, but (9) not a proximate cause of the accident, and (12) that the action of the personnel of Silo Builders, Inc., in continuing to use the cable was the sole proximate cause of the accident.

Further, the jury found that (13) the failure of Texas Concrete Silo Company to require safety belts was not the sole proximate cause of the accident, that the continued use of the cable by Garcia (14) and Salinas (16) was not negligence, and that their failure to wear safety belts was not negligence (18, 20). Texas Concrete Silo Company did not fail to require supervisory personnel to replace damaged cables (22), it did not fail to instruct Garcia (25) or Salinas (27) of the dangers of using damaged rope, but did fail to instruct appellants on the proper use of safety belts (29), but that such action was not a proximate cause of the accident (30). The jury also found that the general practice in the industry was not to use safety belts. The jury also answered damages issues, awarding Garcia $50,000.00 in general damages (32), and $10,000.00 for medical expenses (33), and $20,000.00 to Salinas' parents for loss resulting in their son's death (34), $12,000.00 for Salinas' conscious pain and suffering (35), and $15,000.00 for medical expenses (36).

In addition to the ordinary instructions and definitions of preponderance of the evidence, negligence, ordinary care, and proximate cause, the court gave the following instructions to the jury:

"You are instructed that a manufacturer has no duty to use the safest design which can be conceived or imagined, but has the duty to employ such design as would be employed by a manufacturer of ordinary prudence exercising such care as would be exercised by a manufacturer of ordinary prudence in the exercise of ordinary care under the same or similar circumstances."

This instruction is the subject of appellants' first five points of error. It is challenged on the grounds that it is an incorrect statement of the law applicable to a strict liability case, that it constitutes an improper general charge, that the instruction was given generally, and not restricted in its applicability to other than the first two issues, the strict liability issues, that the instruction constituted a comment on the evidence, and that the judge should have given additional limiting instructions.

■ The trial court erred in giving the instruction because it was a general charge on the law. Rule 277, Texas Rules of Civil Procedure, "does not authorize the

giving of an instruction which is not 'necessary to enable the jury to properly pass upon and render a verdict on such issues;' and which is calculated to prejudice one of the parties before the jury." Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481 (1943). The Supreme Court has recently held that a correct statement of the applicable law given as an instruction properly limited to the relevant issues, was nonetheless objectionable as a general charge. Pittsburg Coca-Cola Bottling Works v. Ponder, 443 S.W.2d 546 (Tex.Sup.1969).

Appellants' sixth point of error complains of the instruction given by the trial court when he sent the jury back to resolve a conflict in their original answers. Special Issue No. 5 inquired whether the negligent design of the sky climber device, if so found by the answers made to Special Issues Nos. 3 and 4, was a proximate cause of the occurrence in question. The jury had originally answered "We do." The jury had also found, in response to Special Issue No. 12 that the continued use of the cable by personnel of Silo Builders, Inc., was the sole proximate cause of the accident. In refusing to accept their verdict, the trial judge gave the following challenged instruction:

"Ladies and gentlemen, I cannot accept your verdict because there is a conflict between your answers to Special Issues Nos. 3, 4 and 5, and Special Issue No. 12, and particularly between Nos. 5, being in conflict with your answer to Special Issue No. 12. In considering your answers, I further instruct you that by the term 'wire rope', as used in No. 3, is meant an undamaged wire rope normally used by persons of ordinary prudence in the exercise of ordinary care under the same or similar circumstances."

The instruction, particularly the last sentence, is challenged as being unnecessary, constituting a comment on the weight of the evidence, and placing undue and improper emphasis on appellee's position in the case.

When there exists a conflict in the answers of the jury to special issues, the court is under a duty to retire the jury for further deliberation after calling attention to the conflict. Rule 295, T.R.C.P. The court must point out the conflict, but must exercise caution in order that he not indicate to the jury how he feels the issues should be answered. The Supreme Court has stated in A. B. C. Stores, Inc. v. Taylor, 136 Tex. 89, 148 S.W.2d 392 (1941):

"The trial court should have sustained plaintiff's motion to return the jury to its room for further consideration of the charge, pointing out in this connection (without comment) the issues the findings to which are in conflict * * *."

The holding above, in A. B. C. Stores was cited and the "without comment" aspect emphasized in the case of Fort Worth & Denver City Ry. Co. v. Walters, 154 S.W.2d 177 (Tex.Civ.App.—Fort Worth 1941, writ ref., w. m.).

In the instant case, had the court terminated its instruction at the end of the first sentence, the instruction would have been correct. However, by adding the definition of "wire rope", the court directed the attention of the jury to the answers made to Special Issues Nos. 3, 4 and 5. The added instruction could have been interpreted by the jury as indicating that the court questioned its answers to those issues. As submitted, the instruction constituted an impermissible comment on the weight of the evidence.

Appellants' seventh point of error complains of the action of the court in admitting into evidence certain testimony by the witness Dye concerning statements made to him by Kenneth Perry, the foreman on the job. Dye testified to a telephone conversation he had with Perry during which Perry allegedly admitted that he may have been mistaken in testifying earlier in the trial about having recently replaced the wire rope on the scaffold hoist. The testimony by Dye was clearly hearsay and in-

admissible unless brought within one of the exceptions to the hearsay rule.

■ When originally offered, over proper and timely objection by appellants' counsel, the statement was admitted as a prior inconsistent statement of a witness, and for that limited purpose only. This was error. In order for a prior statement to be admissible, even for impeachment purposes alone, the witness to be impeached must first be confronted with the alleged prior contradictory statement. Carrick v. Hedrick, 351 S.W.2d 659 (Tex.Civ.App.— Amarillo 1961, no writ); Buford v. Baldwin, 287 S.W.2d 301 (Tex.Civ.App.— Texarkana 1956, no writ); Ray v. Gage, 269 S.W.2d 411 (Tex.Civ.App.—Fort Worth 1954, writ ref., n. r. e.); Parker v. Schrimsher, 172 S.W. 165 (Tex.Civ.App.— Amarillo 1914, writ ref.). See also 1 McCormick & Ray, Texas Law of Evidence, § 692 (2d ed. 1956).

■ In his brief on appeal, counsel for appellee attempts to justify the admission of the testimony in question on the basis of it being an admission against Texas Concrete Silo Company on the question of indemnity. In order for an admission of this nature to be admissible as an exception to the hearsay rule, it must be shown that the purported agent was in fact an agent of the corporation and that he had some authority, expressed or implied, to bind the company. Kenneth Perry was an employee of Silo Builders, Inc. Appellee cites evidence tending to indicate that Texas Concrete Silo Company and Silo Builders, Inc., were treated as a single entity. Texas Concrete Silo Company is a party to this suit, but Silo Builders, Inc., is not.

Even assuming that this were true, there is nothing to indicate that Kenneth Perry had authority, expressed or implied, to bind the corporations.

"Declarations of an agent or employee are admitted against the principal or employer as an exception to the hearsay rule and to make them admissible the facts must bring them clearly within the limitations of the exception. Not only must such declarations be made within the course of the employment, but they must bear close relation to the performance of an authorized duty or act in connection with which they are made. They must not be purely voluntary or made merely in casual conversation. Hinson v. Ely Walker & Co., 65 Tex. 103; Southern Surety Co. v. Nalle & Co., Tex.Com.App., 242 S.W. 197; McCormick & Ray's Texas Law of Evidence, pp. 658–662, Sec. 508." Le Sage v. Pryor, 137 Tex. 455, 154 S.W.2d 446 (Tex.Com.App.1941), at page 450.

The action of the trial court in admitting this hearsay testimony cannot be sustained on the theory that the statement was a declaration against the interest of the declarant's employer. Texas General Indemnity Co. v. Scott, 152 Tex. 1, 253 S.W. 2d 651 (1952); Deaton & Son, Inc. v. Miller Well Servicing Co., 231 S.W.2d 944 (Tex.Civ.App.—Amarillo 1950).

■ Appellants' eighth point of error protests the trial court's action in admitting into evidence a wire rope, purportedly the bottom portion of the wire rope involved in the accident. Appellants complain that no proper chain of possession was established to show that the rope admitted was the same one involved in the accident and further that it had not been tampered with. The trial court did not err in admitting the piece of cable.

There was testimony that a piece of wire cable was in the hoisting mechanism when it was moved out of the silo on the day of the accident; that the next day the mechanism including the cable was picked up by a Sky Climber employee and taken to another employee, who mailed it to another employee in California. There was evidence that the cable introduced into evidence appeared to be in the same condition as it was when it was picked up. There was no direct testimony that the exhibit was part of the cable in question or that

the appearance of the cable at the time of the trial was the same as immediately after the fall.

"It may happen that the present condition of an article or object is not the same as at the time in question nor so nearly the same as to be of any probative value in determining its former condition, whence proceeds the limitation that real evidence is proper only where the condition is the same or sufficiently similar. The decision as to whether the offering party has made a sufficient showing of similarity of condition is one resting in the discretion of the trial court. * * *

"The party who offers an article or object in evidence must show that it is the identical thing which is proved to have been connected with the controversy * * *. But if from the evidence reasonable men could infer identity, any lack of positiveness in identification should go to the weight and not to the admissibility of the article. * * *" McCormick & Ray, Texas Law of Evidence, Sec. 1458 (1956).

Appellants complain that the court erred in submitting Special Issue No. 12 asking whether "the action of the personnel of Silo Builders, Inc., in continuing to use the cable in use" on the hoisting machine was the sole proximate cause of the accident in question. The court also submitted issues asking whether the action of Joe Garcia (Issues 14 and 15) and of Felipe Salinas (Issues 16 and 17) in continuing to use the cable was negligence and a proximate cause of the accident in question. Both Garcia and Salinas were employees of Silo Builders, Inc. The court erred in submitting Issue No. 12. Smith v. Red Arrow Freight Lines, Inc., 460 S.W.2d 257 (Tex.Civ.App.—San Antonio 1970, writ ref., n. r. e.). Hodges on Special Issue Submission in Texas, Sec. 22, pp. 58–61.

Appellee contends that even if the trial court erred in the manner of submitting the issues relating to defective design, the case should be affirmed because it was not shown that the alleged errors resulted in the rendition of an improper judgment. This argument is based on the proposition that there is no evidence that the design of the Sky Climber device was defective in any respect and that the issues relative thereto should not have been submitted. In determining the "no evidence" issue only that evidence favorable to appellant can be considered.

The Supreme Court of Texas has adopted the rule that "a manufacturer who places in commerce a product rendered dangerous to life or limb by reason of some defect is strictly liable in tort to one who sustains injury because of the defective condition." Darryl v. Ford Motor Company, 440 S.W. 2d 630 (Tex.1969).

In McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.1967), the court adopted the rule of strict liability as stated in Section 402A of the American Law Institute Restatement of the Law of Torts (2nd Ed.). Pittsburg Coca-Cola Bottling Works v. Ponder, 443 S.W.2d 546 (Tex. Sup.1969). Section 402A provides that:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer * * * is subject to liability for physical harm thereby caused to the ultimate user. * *

"(2) The rule stated in Subsection (1) applies although

"(a) The seller has exercised all possible care in the preparation and sale of his product, and

"(b) The user or consumer has not bought the product from or entered into any contractual relation with the seller."

In Comment g. under § 402A, headed "Defective Condition", it is stated that the rule applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dan-

gerous to him. In Comment i. it is explained that by "unreasonably dangerous" is meant "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Dean W. Page Keeton in an article entitled "Products Liability—Inadequacy of Information, 48 Texas Law Review 398, suggests that the following propositions are sound:

"(2) a product is unreasonably dangerous at the time of sale if the ordinary man, knowing the risks and dangers actually involved in its use—however latent or scientifically undiscoverable one or more of the hazards might have been and whether due to a miscarriage in the manufacturing process or to the way the product was designed—would not have placed it in the channels of commerce; (3) a product is unreasonably dangerous at the time of sale if the ordinary man, knowing the risks and dangers actually involved in its use, would not have marketed the product without supplying more information about the risks and dangers involved in its use and ways to avoid harm therefrom. All of these propositions can be stated perhaps in one general proposition: if the sale of the product under all the circumstances under which it was marketed subjected the consumer or others to an unreasonable risk of harm, the seller is subject to liability, and it is not relevant that he neither knew nor could have known nor ought to have known in the exercise of ordinary care that the unreasonable risk actually existed. It is enough that had he known of the risk and dangers he would not have marketed the product at all or he would have done so differently."

■ While the Supreme Court of Texas has not as yet applied the strict liability rule to defective design cases, the Waco Court of Civil Appeals in a well reasoned case has held the rule applicable. Pizza Inn, Inc. v. Tiffany, 454 S.W.2d 420 (Tex. Civ.App.1970). The rule has been applied to defective design cases in other jurisdictions. Pike v. Frank G. Hough Company, 2 Cal.3d 465, 85 Cal.Rptr. 629, 467 P.2d 229 (1970); Ginnis v. Mapes Hotel Corp., 470 P.2d 135 (Nev.1970); Olsen v. Royal Metals Corp., 392 F.2d 116 (U.S.Ct.App., 5th Cir. 1968); Wagner v. Coronet Hotel, 10 Ariz.App. 296, 458 P.2d 390 (Div. 1, 1969); Wright v. Massey-Harris, Inc., 68 Ill.App.2d 70, 215 N.E.2d 465 (5th Dist. 1966); Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1962). We agree that the doctrine of strict liability is applicable to defective design cases.

■ Here the injury was sustained by employees of the lessee of the product alleged to be defective. The product was manufactured by the lessor. It was being used for an intended purpose. The burden was on appellants to show that the product was defective and, by reason thereof, unreasonably dangerous to them. It has been held in Illinois that a product is defective if it is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function. Dunham v. Vaughan & Bushnell Mfg. Co., 42 Ill.2d 339, 247 N.E.2d 401 (1969). In Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182, the court held:

"The plaintiffs must prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control."

In Pike v. Frank G. Hough Company, supra, the Supreme Court of California approved the rule stated in a previous case that "a product, although faultlessly made, may nevertheless be deemed 'defective' under the rule [in Restatement Second of Torts, section 402A] and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no

warning given." The court then stated: "No rationale has been suggested to justify imposing strict liability with respect to a faultlessly made product which is unreasonably dangerous because it is produced without safety warnings, while refusing to impose strict liability with respect to a product which is unreasonably dangerous because it is produced without safety devices." See also Sills v. Massey-Ferguson, Inc., D.C., 296 F.Supp. 776 (1969).

■ The evidence in this case is such that reasonable men might consider the Sky Climber unit unreasonably dangerous to the user, both under the rationale suggested by Dean Keeton, and under that found in the comments under Section 402A of the Restatement.

There is evidence that the cable pulled apart inside the hoisting mechanism despite the fact that no defects were noticed on careful examination when the platform was hoisted to the work area. There is evidence that the cable was relatively new, but that defects, such as fish hooks, bird cages, or kinks, are to be expected after a few weeks of use. There is evidence that after the accident defects were found in that part of the cable below the point at which the cable parted. Reasonable men might determine that these defects resulted from the wear occasioned by the last run, and could not have been discovered. Since the defects are caused by wear, such circumstances could be anticipated. In the absence of a suitable safety device the product might be found unreasonably dangerous and, therefore, defective.

There was also expert testimony that cable in good condition could partially pass under one of the fair-lead guide fingers and catch between the finger and the drum. The expert also testified that if the hook from which the cable was suspended was stable the set-up of the hoisting mechanism was such that it could cause a cable in good condition to untwist and allow some of the strands of wire to be caught under the fair-lead guide fingers. It is not established as a matter of law that Garcia and Salinas knew and appreciated the danger involved in the use of the Sky Climber.

The evidence also raises issues as to whether the device was defective, i. e., unreasonably dangerous, because of the failure of the lessor to give suitable warnings of the danger involved in its use.

Appellant, Texas Concrete Silo Company, presents nine points of error, all complaining in one form or another of the trial court's action in holding it liable to Sky Climber, Inc., and Sky Climber's insurer for indemnity amounting to $31,799.98, all or nearly all of which sum was for attorney's fees and court costs. Appellants' points do not present error.

Without going into the terms of the lease agreement which contain the indemnity clauses, the agreement is a broad instrument with detailed provisions for certain situations. Among the phrases most relied upon by appellee are:

"3. The lessee [Texas Concrete Silo] * * * agrees * * * to pay all claims and damages arising from defects [in the machinery and equipment]. * *
"* * *
"5. * * * lessee agrees to hold * * * [Sky Climber] * * * harmless from any claim of whatsoever kind or nature. * * * This hold harmless agreement shall encompass any claims arising from either or both personal injury and property damage. * * *"

These and other parts of the agreement clearly indicate that under the contract appellant was to assume full liability for any loss, expense or damage sustained by appellee.

■ The indemnity provisions were sufficiently pleaded to raise the issue of indemnity, and evidence was introduced to sustain the court's holding requiring appellant to indemnify Sky Climber for the costs in defending the suit. Attorney's fees and court costs have been held to come un-

der a general indemnity agreement, Ohio Oil Company v. Smith, 365 S.W.2d 621 (Tex.Sup.1963), Monical & Powell, Inc. v. Bechtel Corp., 404 S.W.2d 911 (Tex.Civ. App.—Eastland 1966, writ ref., n. r. e.), including, as here, attorney's fees for appeals if taken from the final judgment.

The judgment is affirmed as to appellant Texas Concrete Silo Company, and it is reversed and remanded as to appellants Joe Garcia, Francisco Salinas and Guadalupe Salinas.