Ezzie WELCH, Administrator of the Estate of Samuel Welch, et al.,
Plaintiffs-Appellants,

v.

OUTBOARD MARINE CORPORATION,
Defendant-Appellee.

No. 72–1974.

United States Court of Appeals,
Fifth Circuit.

April 20, 1973.

Daniel E. Broussard, Jr., Alexandria, La., for plaintiffs-appellants.

Reginald W. Farrar, Jr., Lake Charles, La., for defendant-appellee.

Before WISDOM, BELL and COLEMAN, Circuit Judges.

WISDOM, Circuit Judge:

This diversity case involves Louisiana products liability law. The question of particular interest as a matter of law is whether the district court properly charged the jury on what constitutes an "unreasonably dangerous" product in Louisiana.

Mrs. Ezzie Welch, mother of Samuel Welch, a minor, in her capacity as natural tutrix of her son, sued Outboard Marine Corporation for damages for personal injuries. Young Welch sustained a serious and painful injury when a lawn mower, manufactured by Outboard, threw a piece of wire from its rear that became deeply imbedded in his right ankle. The jury responded to special interrogatories by concluding that the injury was not proximately caused by a defect in the design or construction of the mower that made it unreasonably dangerous for normal use.[1]

On appeal the plaintiff seeks a reversal on three grounds. She argues: (1) that the district court in its charge to the jury misstated the substantive law of Louisiana regarding the definition of "unreasonably dangerous" and gave two contradictory definitions of that phrase; (2) that the jury verdict was not properly supported by the evidence; and, (3) that the court should not have charged the jury with respect to contributory negligence. We conclude that the charge was not legally erroneous or confusing, that there was substantial evidence for the jury verdict, and that the issue of contributory negligence is moot. We affirm.

I.

The plaintiff contends that the district court incorrectly stated the Louisiana definition of the term "unreasonably dangerous" in its jury charge and, what is more, confused the jury by giving two contradictory definitions of that term. Counsel for the plaintiff did not object to the charge until he moved for a new trial but he contends that the court should review the charge under the "plain error doctrine".

The lower court charged the jury:

"Now, in determining whether or not something was unreasonably dangerous to the user you are instructed that the definition of dangerous is generally speaking intended or beset with danger, full of risks, perilous. In determining whether or not there was a defect you are instructed that a condition is unreasonably dangerous so as to constitute a defective condition when it is so dangerous that a reasonable man would not sell the product if he knew of the risks involved.

"In the instant case there is no evidence of any mistake in the production or ordinary negligence on the part of the defendant. We are here confronted with what we usually refer to as a design problem. The product was used exactly as it was intended to be used and yet harm incurred.

"For the design to be unusually dangerous it must be so dangerous that a reasonable man would not sell the product if he knew the risks involved. To put it another way, a product is unreasonably dangerous if it is dangerous to an extent beyond which

---

1. The first interrogatory read: "Were the injuries sustained by Samuel Welch proximately caused by a defect in the design or construction of the Lawn Boy Power Mower which made it unreasonably dangerous for normal use?"

would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community as to its characteristics."

Section 402 A of the Restatement of Torts, Second states: "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer . . . ." Comment g (Defective Condition) explains that the rule applies "only where the product, is at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him". The plaintiff bears the "burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller". Comment i (Unreasonably Dangerous) explains that:

"The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. . . . The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. . . ."

The first portion of the quoted charge deals with what is a defective condition, as does Comment g of Section 402 A. Unlike Comment g however, which defines a defective condition as one "not contemplated by the ultimate consumer", the definition in the charge is in terms of what a reasonable seller would do if he knew of the risks involved. The last paragraph of the quoted charge, however, eliminates any possible confusion, for it states that another way of saying what is an "unreasonably dangerous" condition is to describe it as one that is "dangerous to an extent beyond which would be contemplated by the ordinary consumer". This last sentence quoted from the charge exactly tracks the language of Comment i of Section 402A.

It should be noted that the first definition deals with "defective condition" and the second with "unreasonably dangerous". This parallels the Restatement treatment of the subject. We see no necessary inconsistency between a seller-oriented standard and a user-oriented standard when, as here, each turns on foreseeable risks. They are two sides of the same standard. A product is defective and unreasonably dangerous when a reasonable seller would not sell the product if he knew of the risks involved or if the risks are greater than a reasonable buyer would expect. As Dean Wade has pointed out, since the test for imposing strict liability is whether the product was "not reasonably safe", this test characterizes the seller's or manufacturer's conduct as well as the product. If the defendant has actual or constructive knowledge of the condition of the product, it would be unreasonable for him to sell it. Wade, Strict Tort Liability of Manufacturers, 19 Sw.L.J. 5, 15 (1965).

The language of the seller-oriented standard, as the parties agree, was taken verbatim from a charge approved by this Court in a Texas diversity case, Olsen v. Royal Metals Corporation, 5 Cir. 1968, 392 F.2d 116. In *Olsen* the Court noted that the Texas courts had extended the strict liability doctrine as expressed in Section 402A to all defective products. See McKisson v. Sales Affiliates, Inc., S.Ct.Tex.1967, 416 S.W.2d 787.

Louisiana courts have not expressly approved the language of Section 402A, but, and consistent with civil law principles, doctrinally the Louisiana decisions are now in agreement with the concept of strict liability based on warranty as embodied in the Restatement of Torts, Second. We shall not review these cases because Soileau v. Nicholas Drilling Company, W.D.La.1969, 302 F.Supp. 119 contains a thorough and incisive discussion of the evolution of the Louisiana rule. In that case Judge Richard J. Putnam concluded:

"It is now the settled jurisprudence of Louisiana that there is a species of

strict liability in tort based upon civil law concepts of fault and not circumscribed by considerations of negligence, or personal culpability, imposed upon manufacturers. This rule, with slight theoretical differences, reaches the same result as Section 400 and 402A of the Restatement of Torts, Second, supra."

See also Lartigue v. R. J. Reynolds Tobacco Company, 5 Cir. 1963, 317 F.2d 19 and Penn v. Inferno Manufacturing Corp., 199 So.2d 210 (La.App. 1 Cir. 1967), cert. denied 251 La. 27, 202 So.2d 649 (1967).

Weber v. Fidelity & Casualty Ins. Co., 1971, 259 La. 599, 250 So.2d 754 is the latest and most important relevant decision of the Louisiana Supreme Court on products liability. In that case the court allowed recovery of damages against a manufacturer for the death of cattle sprayed with a water soluble arsenic solution used to control animal parasites. The plaintiffs made no showing of any particular negligence by the defendant. Justice Albert Tate, author of the majority opinion in *Weber* phrased the rule as follows (250 So.2d 755, 756):

"A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving the product was defective, i. e. unreasonably dangerous to normal use, and that plaintiff's injuries were caused by reason of the defect. . . . If the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by the maker in its manufacture or processing; for the manufacturer is presumed to know of the vices in the things he makes, whether or not he has actual knowledge of them."

Justice Tate, perhaps deliberately, avoided the use of the term "strict liability" and he omitted any reference to Section 402A of the Torts Restatement, although he cited two outstanding cases expounding the doctrine of strict liability: Greenman v. Yuba Power Products, Inc., 1963, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P. 897 and Henningson v. Bloomfield Motors, 1960, 32 N.J. 358, 161 A.2d 69. Justices Hamlin and McCaleb, the dissenting justices, however, apparently understood the majority opinion as equating the *Weber* standard with the strict liability doctrine as expressed in the Restatement. For they referred to the plaintiff's contention that the Restatement of Torts "is exactly in point with the instant case", quoted the black letter of Section 402A and also Comment g on "Defective Condition", and then declared that "Louisiana has not as yet incorporated the Restatement of Torts, supra, as such into its jurisprudence". 250 So.2d at 765.

It is also of interest that Justice, then Judge, Tate laid a predicate for *Weber* in Meche v. Farmers Drier and Storage Co., 193 So.2d 807 (La.App. 3 Cir. 1967). There he expressed himself in terms of Restatement strict liability (193 So.2d 811):

"A manufacturer or seller of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part sustains an injury caused by a defect in the design or manufacture of the article, if the injury might have reasonably been anticipated."

Judge Tate supported this statement by citing Section 402A, quoting the black letter of the section, and citing Prosser on Torts. Prosser was the Reporter for the Restatement of Torts, Second, at the time the American Law Institute adopted Section 402 A. See also Judge Tate's

dissent in Thomas v. Gillette Co., 230 So.2d 870, 879 (La.App. 3 Cir. 1970).

■■ As we read *Weber*, therefore, we conclude the Louisiana Supreme Court has extended the strict liability doctrine, which it earlier applied in food cases, to all manufactured articles. The standards established in *Weber* are substantially the same as the standards expressed in Section 402A of the Torts Restatement. The result is consistent with Louisiana law. Fault as the violation of a duty—even in the absence of negligence—agrees with civilian principles generally and with Article 2315 of the Louisiana Civil Code specifically. See Stone, Tort Doctrine in Louisiana: The Concept of Fault, 27 Tul.L.Rev. 1 (1952). "Delictual responsibility without *dolus* (wilful harming) or *culpa* (negligent harming) is explainable in terms presumption of fault". *Lartigue*, 317 F.2d at 31. In products liability cases fault is imputed to the manufacturer when he violates his duty to the public by marketing a product carrying foreseeable risks to the user or consumer. The effect of *Weber* has not been fully evaluated,[2] but we find that the decision fully supports the district court's charge.

■■ The charge as a whole was accurate and fair to both parties. The court informed the jury that the plaintiff did not have to prove negligence, because a manufacturer was presumed to know the defects of an article which he manufactures. The court also charged the jury that the plaintiff had the burden of proving proximate cause, an unreasonably dangerous condition, and that the injury might have been reasonably anticipated.

## II.

■ The plaintiff contends that there is insufficient evidence for the jury verdict. Our role in response to such a challenge was stated in Boeing Co. v. Shipman, 5 Cir. 1969, 411 F.2d 365, 374:

"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just the evidence that supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."

■ Each party introduced his own expert to testify concerning the safety of the mower. The plaintiff's expert had no experience with the design of residential mowers, though he had designed a highway heavy use mower. His opinion was that the safety of the Lawn Boy mower was inadequate and that an inexpensive design change could have prevented the accident. He testified that in fact one other mower manufacturer had added a hinged plate on the rear of the mower to obstruct the path of dangerous missiles. This expert himself, however, owned and used a mower without such protective devices; he felt that this was dangerous, but was undecided whether it was unreasonably dangerous. This expert stated that he had no knowledge of the functional difficulties which such safety devices would present, nor did he have any knowledge of industry safety standards.

2. But see Note, 33 La.L.J. 151 (1972) and Note, 18 Loy.L.Rev. 216 (1971–72).

The defendant's expert, employed by the defendant as a design engineer since 1960, testified that the mower in question met all industry safety standards for the year in which it was manufactured. He further stated that because the blade was recessed inside the mower housing, an object could not be thrown directly out from the blade but would be thrown downward, striking the ground first. Furthermore the mower had a second rear wall, four inches behind its inner cylindrical wall, to present a further obstacle to the escape of flying objects. A discharge chute to the side of the mower directed the path of flying grass and other debris. He also testified that the safety devices suggested by the plaintiff would present other functional and safety problems. In fact, Lawn Boy had once offered a rear hinged plate as optional equipment but it was removed from the market because of a lack of demand.

This review of the testimony of the design experts reveals a substantial evidentiary basis for the jury's verdict that the design or construction was not unreasonably dangerous for normal use. *See* Boeing Co. v. Shipman, *supra.* Here the conflict in substantial evidence as decided by the jury must stand.

### III.

■ Finally, the plaintiff contends that because Louisiana has adopted strict liability for product defects, the court erred in charging the jury with respect to contributory negligence. Langlois v. Allied Chemical Corp., 1971, 258 La. 1067, 249 So.2d 133.

Because the jury exculpated the defendant from liability, it did not reach the special interrogatory dealing with contributory negligence. That issue is irrelevant, moot; it was not a factor in the jury determination.

The judgment must be affirmed.