JIM W. MILLER CONSTRUCTION, INC., Respondent,

v.

Richard SCHAEFER, d. b. a. Realty Five, Appellant.

Nos. 49753, 49941.

Supreme Court of Minnesota.

Oct. 24, 1980.

---

Hughes, Thoreen & Sullivan, Kevin J. Hughes and James F. Marrin, St. Cloud, for appellant.

Donohue & Rajkowski and Michael H. Donohue, St. Cloud, for respondent.

Heard before OTIS, PETERSON, and SCOTT, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Defendant, Richard Schaefer, appeals from the trial court's order directing entry of judgment against him in the amount of $15,000 for breach of a restrictive covenant contained in an employment contract. We reverse.

Plaintiff, Jim W. Miller Construction, Inc., a Minnesota corporation operating in the vicinity of St. Cloud, Minnesota, is engaged in the business of construction and real estate sales. Plaintiff is organized in two divisions, a commercial and residential construction division and a real estate sales division.

In July 1973, plaintiff hired defendant to work as a salesperson in its real estate sales division. Defendant was 23 years old at the time. Although he had gained some knowledge of property valuation through previous employment with a Stearns County reappraisal project, he had had no experience in real estate sales.

During the first 2 years of his association with plaintiff, defendant worked as an in-

dependent contractor. In the fall of 1975, defendant was asked to become an employee of plaintiff.[1] On November 1, 1975, plaintiff and defendant executed an instrument entitled "Employment Agreement." Clause VIII of the instrument provides:

Employee covenants that upon any termination of this agreement, he will not, individually, or as the agent, servant, or employee of any other person, firm, or corporation, either directly or indirectly, engage in the same or similar business of Jim W. Miller Construction, Incorporated and Miller–Built, Inc. or be employed as a real estate broker or real estate salesperson for a same or similar business as Jim W. Miller Construction, Incorporated, Miller–Built, Inc. within a One–Hundred (100) mile radius nor operate individually as a real estate broker within a Twenty (20) mile radius of the City of St. Cloud, Minnesota, for a period of two (2) years from and after the termination of such employment. However, employee would be eligible to take a position as a real estate salesperson with a real estate broker engaging strictly in real estate sales. Recognizing the difficulties in establishing the damages which will be sustained by the Company upon the breach of this part of the agreement, the Company and Employee agree that a reasonable amount of liquidated damages for breach of this provision is Thirty Five Thousand dollars and no/one hundreds ($35,000.00), that this is in no way a penalty, but instead is designed to provide a reasonable amount of liquidated damages in the event of breach by prior agreement of the parties.

During his tenure with plaintiff, defendant became a competent and successful real estate salesperson. Morrie Johnson, a real estate broker and the manager of plaintiff's real estate sales division, testified at trial that the reason plaintiff offered defendant employee status was that defendant "was doing a good job for us." For the fiscal year ending October 31, 1977, defendant was the top salesperson in plaintiff's real estate sales division.

In October 1977, plaintiff learned that defendant and three other individuals who worked as real estate salespersons for plaintiff were planning to go into the real estate sales business on their own and had formed a corporation for that purpose. On or about October 24, 1977, plaintiff terminated the employment contracts of defendant and the three other salespersons. For a short time following his termination, defendant worked as a salesperson for a real estate firm located in St. Joseph, Minnesota. In December 1977, defendant obtained a real estate broker's license. In January 1978, the newly-formed corporation, Realty Five, began doing business in St. Cloud, with defendant acting as its broker. Realty Five deals in commercial and residential real estate and handles sales of both newly-constructed buildings and buildings which have been previously occupied.

In March 1978, plaintiff commenced this action against defendant, alleging that defendant violated Clause VIII of the employment agreement and demanding $35,000 as liquidated damages.[2] The trial court found that the employment agreement was a valid contract, that the restrictive covenant contained in Clause VIII of the employment agreement was enforceable, and that defendant had breached the restrictive cove-

1. As an employee of plaintiff, defendant would be provided with hospitalization and life insurance, would be eligible for unemployment benefits and participation in plaintiff's profit–sharing plan, and would receive a salary of $160 per week and an automobile allowance of $70 per week in addition to a commission.

2. Plaintiff sought additional damages of $15,000 based upon the allegation that defendant had tortiously interfered with employment agreements existing between plaintiff and other individuals by intentionally inducing those indi-

viduals to leave plaintiff's employ and join defendant in competing with plaintiff. Plaintiff also requested an injunction prohibiting defendant "from using or disclosing customer names, lists or other trade secrets obtained from his employment with Plaintiff." The trial court granted plaintiff no relief upon the claim for tortious interference with the employment agreements and did not issue the requested injunction. Plaintiff has not sought review of the trial court's action.

nant by engaging in business as a real estate broker within a 20–mile radius of the city of St. Cloud less than 2 years after leaving plaintiff's employ. The trial court did not, however, allow plaintiff to recover the full amount of the liquidated damages. It found that $15,000 would reasonably compensate plaintiff for its loss and ordered entry of judgment in that amount. Defendant now appeals.[3]

On appeal defendant argues that the restrictive covenant is unreasonable and therefore unenforceable. We agree with defendant's contention.

We have consistently taken a cautious approach to the question whether to permit an employer to enforce a restrictive covenant in an employment contract. Such covenants are looked upon with disfavor because their enforcement decreases competition in the marketplace and restricts the covenantor's right to work and his ability to earn a livelihood. The covenant itself may be infirm if the parties were in positions of unequal bargaining power at the time they entered into the contract. *See Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127 (Minn.1980), filed October 17, 1980; *Harris v. Bolin*, 310 Minn. 391, 247 N.W.2d 600 (1976); *Eutectic Welding Alloys Corp. v. West*, 281 Minn. 13, 160 N.W.2d 566 (1968); *Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 134 N.W.2d 892 (1965).

The test to be applied in determining whether a restrictive covenant in an employment agreement is reasonable was established in *Bennett v. Storz Broadcasting Co.*, 270 Minn. at 534, 134 N.W.2d at 899:

> The test * * * is whether or not the restraint is necessary for the protection of the business or good will of the employer, and if so, whether the stipulation

has imposed upon the employee any greater restraint than is reasonably necessary to protect the employer's business, regard being had to the nature and character of the employment, the time for which the restriction is imposed, and the territorial extent of the locality to which the prohibition extends.

The restrictive covenant at issue in this case is unreasonable because the restraint it imposed does not in any legitimate manner protect plaintiff's business or good will. While the restrictive covenant prohibits defendant from "operat[ing] individually as a real estate broker" within a 20–mile radius of the city of St. Cloud during the 2 years following the termination of his employment with plaintiff, it allows him "to take a position as a real estate salesperson with a real estate broker engaging strictly in real estate sales" within the same geographical area and during the same time period. Under state law a real estate salesperson may perform any of the acts a real estate broker is licensed to perform, as long as he is acting on behalf of the broker for whom he is licensed to act.[4] While the restrictive covenant imposes a restraint upon the form of defendant's real estate sales activity, it does not in any way restrain the activity itself. There is nothing in the record to suggest that in acting as a real estate broker for Realty Five defendant can do more harm to plaintiff's business or good will than he could do if he were employed as a salesperson for another real estate firm engaged strictly in real estate sales.

In holding the restrictive covenant reasonable, the trial court relied on the fact that throughout the course of his employment with plaintiff defendant had direct contact with plaintiff's customers. The

---

3. Plaintiff appeals from the trial court's denial of its post–trial motion for amended findings of fact and conclusions of law, arguing that the trial court erred in reducing the amount recoverable under the liquidated damages clause. Because we hold that the restrictive covenant is not enforceable, we do not reach the issue raised by plaintiff's appeal.

4. Minn.Stat. § 82.17, subd. 5 (1978), defines "real estate salesperson" as "one who acts on behalf of a real estate broker in performing any act authorized by [chapter 82] to be performed by the broker." Minn.Stat. § 82.20, subd. 6 (1978), provides that "a salesperson must be licensed to act on behalf of a licensed broker and may not be licensed to act on behalf of more than one broker in this state during the same time period."

court found the restraint on defendant's acting as a broker necessary because as a broker defendant could form a competing real estate business and take advantage of his relationships with plaintiff's customers to the detriment of plaintiff's business and good will. Assuming plaintiff has a legitimate business interest in the relationships defendant developed with plaintiff's customers while he was employed by plaintiff, we fail to see how restraining defendant from acting as a real estate broker while allowing him to act as a real estate salesperson protects that interest. Real estate salespersons generally receive at least part of their compensation in the form of commissions based on real estate sales. Their income thus largely depends on their expertise and personal initiative. If, after plaintiff terminated defendant's employment, defendant had chosen to work as a real estate salesperson with another real estate firm instead of obtaining a broker's license and starting his own firm, we doubt that his use of the advantages he gained during his association with plaintiff would have been any less harmful to plaintiff's business or good will.

 Plaintiff makes the additional argument that the restraint against defendant's acting as a real estate broker is reasonable because defendant gained during his association with plaintiff knowledge of guaranteed sales programs,[5] construction financing, and property valuation, which plaintiff asserts are of more use to defendant as a real estate broker than as a salesperson. Plaintiff's assertion appears to be based on the notion that as a real estate broker directing the activities of salespersons defendant can more easily utilize this knowledge and on evidence that banks were willing to lend Realty Five the funds necessary to carrying out a guaranteed sales program because of their confidence in defendant's expertise. We are not persuaded that plaintiff's assertion is correct. As a real estate salesperson, defendant would be free

to share his knowledge with the broker with whom he was associated. The broker could then direct other salespersons in utilizing this knowledge or, in attempting to convince a bank to make a loan for a guaranteed sales program, could cite defendant's expertise. Moreover, the fact that an employee has during the course of his employment acquired nonconfidential information and skills that are not secret processes cannot support the enforcement of a restrictive covenant. "[N]o restrictions should fetter an employee's right to apply to his own best advantage the skills and knowledge acquired by the overall experience of his previous employment. This includes those techniques which are but 'skillful variations of general processes known to the particular trade.'" *Reed, Roberts Associates, Inc. v. Strauman,* 40 N.Y.2d 303, 307, 353 N.E.2d 590, 593, 386 N.Y.S.2d 677, 680 (1976). Plaintiff does not dispute that the knowledge defendant acquired during the course of his employment with plaintiff was generally available to the public from a variety of sources. Defendant's possession of this knowledge therefore cannot support a restraint on his acting as a real estate broker.

Reversed.

AMDAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

SIMONETT, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

**5.** Morrie Johnson described a "guaranteed sale" as an arrangement whereby a real estate firm agrees to purchase a prospective buyer's present home at a specified price if the home is not sold for that amount or more before a specified date.