**Joseph A. BECKER, d.b.a. Becker HiWay Frate Company, Respondent,**

**v.**

**Patrick S. BLAIR, Appellant.**

**No. C7–84–828.**

Court of Appeals of Minnesota.

Jan. 29, 1985.

Bob A. Goldman, Tuveson, Goldman, Nelson, Chartered, Albert Lea, for respondent.

George R. Serdar, Bowman & London, Ltd., St. Paul, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

This appeal is from a judgment entered for an employer in an action for breach of an employment contract. Following trial to the court, it held that the employee breached the contract by his early termination, and that he could be required to pay the $1500 damages as provided by the contract. We affirm.

## FACTS

In March of 1982, appellant Blair entered into a contract with respondent Joseph Becker, doing business as Becker Hi-Way Frate Company [hereafter, Becker], a trucking company, for employment as an over-the-road truck driver.

Blair had completed a six-month trucking course, but had no over-the-road driving experience, having worked only for local carriers. The employment with Becker was an opportunity to acquire this experience, for which Becker was at least partially compensated by a wage subsidy from the Comprehensive Employment and Training Act (CETA).

Blair signed an employment contract with Becker, dated March 23, 1982. Blair claims that the contract was not actually signed by him until sometime in April, approximately three weeks after he began working for Blair. Becker claims that Blair signed the contract on March 23. The trial court found for Becker on this issue. Blair began working for Becker on March 24, 1982.

The employment contract provides in pertinent part as follows:

Employee acknowledges that, as part of this employment relationship which includes wages and various fringe benefits, employer spends significant sums of money in training, customer contact, customer relations, public relations and the like, which items have a benefit to the employer but also benefit the employee.

Employee recognizes this added cost factor to his employment herein and employee affirms that he will not terminate this employment for the next 36 months from the date of this Agreement except for reasons beyond the control of the employee, such as medical inability to continue employment. In the event employee shall terminate this Agreement prior to said 36 months, employee agrees to pay employer the sum of $1,500.00 as and for a payment for the aforesaid company expenses of customer contact and relations' [sic] improvement and training.

At trial, the testimony of both Blair and Becker indicated that Blair required extensive training before he was qualified to drive a truck for Becker. Approximately one year after being hired by Becker, Blair resigned by letter dated March 29, 1983. The trial court found that Blair voluntarily terminated his employment, "without cause attributable to [Becker]." Shortly thereafter, Blair sought and obtained employment with a Minneapolis-based trucking company.

Becker sued for recovery of the $1,500 which it claimed Blair owed under the terms of the contract. The trial court held that because Blair had terminated his employment prior to the thirty-six month minimum term, he was required to pay $1,500 to Becker as contemplated by the contract. Blair appeals, claiming that the contract is an unenforceable restrictive covenant.

## ISSUES

1. Is the trial court's finding that the written contract was executed at the time of hire clearly erroneous?

2. Is the employment contract provision an unenforceable restrictive covenant?

## ANALYSIS

*1. Execution of the contract*

Blair disputes the execution of the contract, claiming that it was signed well after the March 23, 1982 date which appears on

the document. The trial court found that the contract was signed March 23, 1982. According to Rule 52.01 of the Minnesota Rules of Civil Procedure,

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

The record contains conflicting testimony on the contract execution date. We can only infer that the trial court determined Becker's was the more credible testimony. With that testimony, and the date on the document, the trial court had ample evidence on which to base its finding.

*2. Restrictive covenant*

A restrictive employment covenant is one which restricts an employee's freedom of employment or engagement in trade or business following the employee's termination. *See, e.g., Jim W. Miller Construction, Inc. v. Shafer,* 298 N.W.2d 455, 458 (Minn.1980). No such restriction was imposed by the contract here. The provision requiring Blair to pay $1,500 if he voluntarily terminated the contract did not restrict his future employment, which he in fact pursued through a job with another over-the-road carrier. This is not a restrictive covenant, but rather an employment contract for a fixed term, which is enforceable. *See, e.g., Thomsen v. Independent School District No. 91,* 309 Minn. 391, 244 N.W.2d 282 (1976). Blair breached the contract by voluntarily terminating it after one year, as the trial court found. Whether the $1,500 payment, which constituted a liquidated damages provision, is reasonable in amount and therefore enforceable, *see, e.g., Willgohs v. Buerman,* 262 Minn. 415, 115 N.W.2d 59 (1962), is not a question presented to us.

## DECISION

The trial court's finding that Blair executed the written contract upon hire is not clearly erroneous. The contract provision at issue is not a restrictive covenant.

Affirmed.