Curtis HAGANS, Plaintiff-Appellee,

v.

OLIVER MACHINERY COMPANY, Defendant-Appellant,

v.

CENTURY MACHINERY COMPANY, Defendant,

Texas Employers' Insurance Company, Intervenor-Appellee.

No. 76–1045.

United States Court of Appeals, Fifth Circuit.

July 10, 1978.

Rehearing Denied Aug. 24, 1978.

Frank Owen, III, Herbert E. Cooper, El Paso, Tex., for defendant-appellant.

Robert D. Earp, El Paso, Tex., for C. Hagans.

Tom R. Coffield, Jr., Dallas, Tex., John A. Grambling, El Paso, Tex., for Texas Employers Ins. Co.

Before TUTTLE, COLEMAN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

In this products liability diversity action, plaintiff Curtis Hagans recovered a $50,000 jury verdict for injuries sustained while operating an industrial table saw manufactured 30 years before by defendant Oliver Machinery Company. Finding no substantial evidence to support plaintiff's claims of strict liability and negligence on the part of the manufacturer, we reverse.

Defendant Oliver Machinery Company is a leading manufacturer of industrial wood-cutting equipment, including commercial table saws. The saw involved in this case, a 2000 pound tilting arbor miter saw designed for industrial use, was manufactured by defendant in 1942 and delivered to the United States Navy. Shortly after World War II, the saw was sold to Century Machinery Company, who in 1960 resold the machine to plaintiff's employer, Utility Trailer Company of El Paso, Texas.

On October 11, 1971, plaintiff seriously injured his left hand while operating the saw. According to plaintiff, he was feeding a board into the saw when the circular blade hit a knot in the wood, causing the board to jerk up abruptly. As the board descended, plaintiff's left hand, which he had been using to steady the board, fell onto the circular blade.[1] Plaintiff's ring finger was completely severed and his middle finger severely lacerated as a result of the accident.

Plaintiff sued in federal district court on theories of strict liability and negligent design, contending that the saw should have been equipped with permanent safety devices or with adequate warnings of the dangerous nature of the machine. After a two-day trial, a jury returned a $50,000 verdict for plaintiff.[2] Defendant appeals,

1. Q  All right. Now, tell me how this particular accident happened.
   A  Okay. I was cutting lumber and, okay, it wasn't—It hadn't gotten close to the saw. I was holding it in my left hand, feeding it with my right and it hit a knot in the piece of lumber. When the saw hit the knot the lumber raised up. Okay, the lumber raised up but the saw already cut through that knot and then after getting to that soft part on the other side of the knot it dropped down. When it dropped down it dropped down at my hand.
   Q  Dropped down on your hand?
   A  No, my hand was on top of the piece of lumber but when it jumped up in the air as it passed a knot, when it fell back down my hand fell back down with it.

   .     .     .     .     .

   Q  Did your hand slip and go forward and get into the blade? I am trying to picture how it got into the blade.
   A  No, it really didn't slip forward and go into the blade but when the saw passed the knot it just passed so quick and dropped down I just didn't have time to get my hand out of the way.

   .     .     .     .     .

   . . . [W]hen it dropped back down my hand dropped on the saw.

2. The district court directed that out of the $50,000 award plaintiff recover $38,305.85 and intervenor, Texas Employers' Insurance Association, recover $11,694.15, it having been previously stipulated by the parties that intervenor had an interest to that extent in any judgment obtained by plaintiff.

arguing that the district court erred in denying defendant's motions for directed verdict and for judgment notwithstanding the verdict.

In determining whether the evidence in this case was sufficient to create a question for the jury, we are guided by standards enunciated in *Boeing v. Shipman*, 411 F.2d 365 (5th Cir. 1969). All of the evidence must be considered, but in a light which draws all reasonable inferences most favorably to plaintiff's case. The case was properly submitted to the jury if the record contains evidence that would lead reasonable and fair minded men exercising impartial judgment to different conclusions. If, on the other hand, the facts and inferences point so strongly and overwhelmingly in favor of defendant that reasonable jurors could not arrive at a contrary verdict, defendant is entitled to judgment. *See id.* at 374–75; *Simien v. S. S. Kresge Co.*, 566 F.2d 551, 556 (5th Cir. 1978). We have carefully considered the record in the light most favorable to plaintiff and find no substantial evidence to support plaintiff's theories of negligence and strict liability. Accordingly, the district court should have entered judgment for defendant.

### Strict Liability

When sold by defendant in 1942, the saw was equipped with a guard assembly that fit over the saw blade. Incorporated into the guard assembly was an antikickback device that prevented the wood from being thrown back by the saw blade at the operator. Because certain important operations could not be performed on the saw with the guard in place, it was designed to be removable. The saw was apparently still equipped with this safety device when sold to plaintiff's employer in 1960, but the guard was not attached to the saw when plaintiff was injured. The record contains no indication when or why the safety device was removed. It is undisputed that plaintiff's injury would have been avoided had the blade guard been attached.

### A. Design Defect

Under the theory of products liability expressed in § 402A of the Restatement (Second) of Torts [3] and adopted by the Supreme Court of Texas, *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967), a manufacturer who sells a product in a "defective condition unreasonably dangerous" is strictly liable for physical harm caused by the defect to the product's user even though the manufacturer "has exercised all possible care in the preparation and sale of his product." A product is "unreasonably dangerous" only if it is "defective," [4] whether designed defectively or improperly and produced as designed, or designed perfectly but improperly or defectively produced. *Henderson v. Ford Motor Co.*, 519 S.W.2d 87, 92 (Tex.1974).

Because many products have both utility and danger, the alleged defect is required to render the offending product "unreasonably dangerous" before strict liability is imposed. A product is unreasonably dangerous if its utility does not outweigh the magnitude of the danger inhering in its introduction into commerce. *Borel v. Fi-*

---

3. § 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965).

4. As used in the Restatement, the terms "defective" and "unreasonably dangerous" are synonymous. *Mitchell v. Fruehauf Corp.*, 568 F.2d 1139, 1142 n.1 (5th Cir. 1978); *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1087 n.20 (5th Cir. 1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

**100**

breboard Paper Products Corp., 493 F.2d 1076, 1087 (5th Cir. 1973) (applying Texas law), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

In balancing utility against danger, the court must not monocularly view the scales from the standpoint of either the user, whose injury convinces him positively that the product is unreasonably dangerous, or the manufacturer, whose profit motive may unduly interfere with his objective evaluation of the product's dangers. Rather, the court is required to consider the legitimate interests of both sides, cognizant that the user is entitled to expect that the product has been properly designed to meet the demands of its intended and proper usage without deficiencies rendering it unreasonably dangerous, but also cognizant that the manufacturer is not an insurer of his product, charged by the law to design every part to be the best that science can produce or to guarantee that no harm will come to the user. Henderson v. Ford Motor Co., 519 S.W.2d 87 (Tex.1974). The standard to be applied in the balancing process can thus be expressed from the perspectives of both seller and user: a product is defective and unreasonably dangerous if a reasonable seller aware of the dangers involved would not sell the product or if the risk of injury exceeds that contemplated by an ordinary and reasonable consumer. Welch v. Outboard Marine Corp., 481 F.2d 252, 254 (5th Cir. 1973); see Reyes v. Wyeth Laboratories, 498 F.2d 1264, 1273–74 (5th Cir.) (applying Texas law), cert. denied, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); General Motors Corp. v. Hopkins, 548 S.W.2d 344, 347 n.1 (Tex.1977).

In evaluating a manufacturer's liability for injuries caused by his inevitably hazardous product, a court must first determine whether the product is so unsafe that marketing it at all is "unreasonably dangerous per se" and, if not, then determine whether the product has been introduced into the stream of commerce without sufficient safeguards, thus rendering it "unreasonably dangerous as marketed." Reyes v. Wyeth Laboratories, 498 F.2d 1264, 1273 (5th Cir.) (applying Texas law), cert. denied, 419 U.S.

1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); see, e. g., Keeton, Products Liability—Inadequacy of Information, 48 Tex.L.Rev. 399, 406 (1970).

Plaintiff Hagans argued to the jury that the removable blade guard assembly should have been designed into the saw as an unremovable safety feature through welding, rivets, or other means of permanent attachment. In support of this contention, plaintiff produced evidence that defendant had known in 1942 that commercial table saws annually accounted for a large number of industrial accidents, that technology was available in 1942 to permanently attach the blade guard assembly to the saw, and that plaintiff's injury would have been avoided had the saw been equipped with the blade guard.

Defendant introduced evidence that in 1942 the saw exceeded industry safety practices and national and associational safety standards, that few competing manufacturers of commercial table saws included blade guards of any kind as standard equipment, and that as of the time of the injury no competitor manufactured an industrial table saw equipped with a permanently affixed blade guard. More importantly, it was undisputed that permanent attachment of the blade guard assembly would substantially limit the saw's usefulness. Common woodworking functions such as dadoing and rabbeting could not be performed on the saw with the guard in position. Indeed, the safety device had to be removed in order to straight-cut pieces of lumber of certain widths. As defense expert witness Professor Ralph Barnett observed, if the blade guard assembly had been welded or otherwise permanently attached to the saw, "[y]ou would wind up with a commercial . . . heavy-duty industrial machine which is not capable of cutting the most ordinary four by eight sheet of plywood . . . ." Plaintiff offered no evidence that in 1942 a permanent guard assembly could have been devised which would protect the operator during every woodworking operation performable on the saw.

A finding for plaintiff on the issue of defective design ignores the fact that "[s]afety is not the only criterion a manufacturer considers when designing a product." *Ward v. Hobart Mfg. Co.*, 450 F.2d 1176, 1184 (5th Cir. 1971). When designing the saw at issue here, the Oliver Machinery Company was faced with the difficult task of reconciling its safety concerns with the realities of a competitive marketplace. It had three basic alternatives. At one extreme, defendant could, as many of its competitors apparently did, market a commercial table saw without any blade guard assembly as standard equipment. At the other extreme, the company could have done as plaintiff suggests: permanently weld or rivet the blade guard assembly in place on the saw. In so doing, however, defendant would render his product incapable of performing many important woodworking functions that could be performed on saws marketed by his competitors.

Finally, recognizing that potential customers for its product expect industrial table saws to perform a wide range of woodworking operations, and that some of those operations cannot be performed with a blade guard assembly in position on the saw, defendant elected the third basic alternative available to it: equipping the saw with a removable blade guard assembly. So equipped, the saw is capable of performing the wide range of woodworking operations expected of it, while at the same time providing the blade guard's protection for those operations which can be performed with a blade guard in place. By designing the saw with a removable blade guard, defendant struck a compromise that maximized the product's utility and safety.

Industrial woodcutting tools are essential to many American industries. In particular, the construction industry is a cornerstone of the American economy and a major contributor to the standard of living in this country. Unfortunately, the nature of the industry is such that its tools, from the smallest tack hammer to the largest earth mover, expose certain risks of harm to their users. Nevertheless, unless civilization is to grind to a halt, these tools, including industrial table saws, must continue to be marketed despite their inherent dangers. Clearly, therefore, defendant's product is not unreasonably dangerous per se.

Nor is the industrial table saw manufactured by defendant unreasonably dangerous as marketed. The evidence is overwhelming that permanent attachment of the blade guard assembly would seriously impair the usefulness of defendant's product. Texas law does not require a manufacturer to destroy the utility of his product in order to make it safe. *See Metal Window Products Co. v. Magnusen*, 485 S.W.2d 355 (Tex.Civ. App.1972) (writ ref'd n. r. e.). On the issue of defective design, the district court should have directed a verdict for defendant.

### B. *Failure To Warn*

A product is unreasonably dangerous and, therefore, defective if the ordinary man knowing the risks and dangers involved in its use, would not have marketed the product without "supplying warnings as to the risks and dangers involved in using the product as well as instructions as to how to avoid those risks and dangers."

*Bituminous Casualty Corp. v. Black & Decker Mfg. Co.*, 518 S.W.2d 868, 872 (Tex. Civ.App.1974) (writ ref'd n. r. e.), *quoting Technical Chem. Co. v. Jacobs*, 480 S.W.2d 602, 605 (Tex.1972).

Plaintiff argues that defendant's failure to warn users of the risks involved in operating the saw without the blade guard assembly rendered the saw unreasonably dangerous. A conspicuous warning plate permanently attached to the machine would have sufficed, according to plaintiff.

The rule requiring manufacturers to inform users of the risks inhering in their products is based on the sound policy that the user is entitled to the information necessary to make an intelligent choice as to whether the product's utility or benefits justify exposing himself to the risk of harm. *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1089 (5th Cir. 1973) (applying Texas law), *cert. denied,* 419 U.S. 869, 95

S.Ct. 127, 42 L.Ed.2d 107 (1974); *Winthrop Laboratories Div. of Sterling Drug, Inc. v. Crocker,* 502 S.W.2d 850, 858 (Tex.Civ.App. 1973), *rev'd on other grounds,* 514 S.W.2d 429 (Tex.1974); *see Ellis v. Moore,* 401 S.W.2d 789, 793 (Tex.1966). Implicit, therefore, in the duty to warn is the requirement that the user be ignorant of the dangers warned against.[5] *Cf. Technical Chem. Co. v. Jacobs,* 480 S.W.2d 602 (Tex.1972) (in strict liability case manufacturer's failure to warn must be a producing cause of plaintiff's injury). Thus, it is generally held that there is no duty to warn when the danger or potentiality of danger is obvious or is actually known to the injured person. *See, e. g., Martinez v. Dixie Carriers, Inc.,* 529 F.2d 457, 466–67 (5th Cir. 1976) (manufacturer of dripolene not strictly liable for failure to warn of dangerous nature of its product and of the precautions necessary for safe handling since crew member, plaintiff's decedent, "knew of the dangers associated with entry into tanks which had carried dripolene and its constituents"); *Posey v. Clark Equip. Co.,* 409 F.2d 560 (7th Cir.) (manufacturer of forklift truck designed without overhead guard not strictly liable for failure to warn of dangers posed by falling objects since the danger is generally known and appreciated and is obvious to anyone, particularly the forklift's operator), *cert. denied,* 396 U.S. 940, 90 S.Ct. 374, 24 L.Ed.2d 242 (1969); Annot., 53 A.L.R.3d 239 (1973).

One can imagine no more obvious danger than that posed by the jagged edge of a circular saw blade spinning at 3600 revolutions per minute. Moreover, plaintiff admitted that he was aware of the dangers involved in cutting knotted wood on the saw.[6] Clearly, a warning of the dangers involved in using the saw would not have informed him of anything he did not already know.

Plaintiff also contends that defendant should have provided a warning informing

---

**5.** The Restatement tacitly acknowledges this requirement in comment j to § 402A: "In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, *will be aware of them, and he is not required to warn against them.*" (Emphasis added).

**6.** The relevant portions of plaintiff's testimony are as follows:

Q   But you knew it [the saw] was dangerous, didn't you?

A   Sure I knew it was dangerous.

Q   All right. Because you knew that it would cut lumber, didn't you?

A   Yes, I did. I knew it was dangerous, but I didn't know I was going to cut myself with it.

Q   Oh, yes. I'm not saying you did it on purpose, Mr. Hagans. . . . All right. Now, so the point is then that in using this saw that didn't have a blade [guard] on it, you didn't need anybody to tell you it was dangerous, because you knew it was dangerous, didn't you?

A   Sure, I knew it was dangerous if you go and stick your hand in it.

.    .    .    .    .

Q   You mentioned in your direct testimony, and you have mentioned just now, that you had trouble at other times.

A   Sure.

Q   With a defect in the lumber or a knot or something in the lumber?

A   Sure did.

Q   Is that right?

A   Yes.

Q   So that wasn't a new subject to you; you had had that experience, hadn't you?

A   That's right.

Q   And your experience had been—you said that if it came to a knot, well, that of slowed down its movement or blade.

A   No, it won't slow it down. Sometimes it speeds it up.

Q   Speeds it up?

A   Sometimes. It may stay the same until it passes. Sometimes it passes the knot and drops down, speeds it up.

Q   So at any rate, you had had that experience with knots?

A   Sure I did.

Q   —before, had you?

A   Yes, sir.

Q   And you had become aware—you knew that one of the problems about feeding lumber through was that a knot is harder than the rest of the lumber, and so it cuts a little different, is that the point of it?

A   Main thing is once it passes that knot, it will raise up when it hits the knot. Once it passes the knot, it will drop back down.

Q   All right. And you said awhile ago you had that experience and always before you had been able to get your hand away from it.

A   That's correct.

users of the existence of the removable blade guard assembly. This Court rejected an identical contention in *Ward v. Hobart Mfg. Co.,* 450 F.2d 1176, 1188 (5th Cir. 1971), commenting: "It seems superfluous to require a manufacturer to warn a user of the danger of using a machine without a safety device where the user is fully conscious of such danger in the absence of the safety device." Although *Ward* was a negligence case, we find its reasoning equally applicable to a claim that lack of such a warning constitutes an unreasonably dangerous defect under § 402A.

██ Plaintiff's contention regarding defendant's failure to warn can also be analyzed in terms of the defense of assumption of risk. A claim of strict liability will fail if the plaintiff discovered the defect and became aware of the danger, but nevertheless voluntarily proceeded to make use of the product. Restatement (Second) of Torts § 402A, comment n at 356 (1965). In Texas, so long as plaintiff encountered the danger voluntarily, it matters not that under the same or similar circumstances, an ordinarily prudent person would have incurred the risk which plaintiff's conduct involved. "Assumption of risk is the defense; contributory negligence or failure to act reasonably is not." *Henderson v. Ford Motor Co.,* 519 S.W.2d 87, 91 (Tex.1974). Adapting a recent Texas Supreme Court statement to the instant facts: "If [Hagans] knew of the absence of [the blade guard] . . ., or if he was charged in law with such knowledge, and he appreciated the danger, strict liability would be defeated." *Rourke v. Garza,* 530 S.W.2d 794, 800 (Tex.1975).

In sum, it is clear that defendant's failure to warn of an obvious danger, admittedly known to and appreciated by plaintiff, did not render the saw unreasonably dangerous for its intended use. Moreover, plaintiff's own testimony established the defense of assumption of risk. Plaintiff's strict liability claim based on failure to warn should not have been submitted to the jury.

### Negligence

Like his strict liability claims, plaintiff's negligence claims were based on defend-

ant's failure to attach the blade guard to the saw in a permanent manner and defendant's failure to warn users of the dangers associated with using the saw without a blade guard.

### A.  Negligent Design

██ It is well settled that a manufacturer is under a duty to use reasonable care in designing his product so that it is reasonably safe for its intended use. *See, e. g., Otis Elevator Co. v. Wood,* 436 S.W.2d 324 (Tex.1968); *Johnson v. Murray Co.,* 90 S.W.2d 920 (Tex.Civ.App.1936). The crucial inquiry in negligent design cases is the question of reasonableness. "The defendant is not obliged to design the safest possible product, or one as safe as others make or a safer product than the one he has designed, so long as the design he has adopted is reasonably safe." *Weakley v. Fischbach & Moore, Inc.,* 515 F.2d 1260, 1267 (5th Cir. 1975) (applying Texas law).

At trial plaintiff introduced evidence that defendant had been aware in 1942 of the high number of injuries caused by industrial table saws, that defendant could have foreseen that its saws would be used without the blade guards in position, and that the blade guard would have prevented plaintiff's injury. This evidence, according to plaintiff, was sufficient to prove that defendant was negligent in not permanently affixing the blade guard in position on the saw.

Defendant, in contrast, produced evidence that it has been a leader in the woodworking industry since 1937 and that its products have always exceeded industry safety practices and associational and national safety standards. Indeed, defendant's saw, built in 1942, was shown to comport with current OSHA safety standards for comparable machines. Additionally, defendant produced evidence that its product was among the safest saws on the market in 1942 and that at the time of trial no manufacturer had produced a table saw with a permanently attached blade guard. Finally, it was undisputed that adoption of plain·

tiff's suggested design alternative would virtually destroy the saw's usefulness as an industrial woodworking tool.

Acceptance of plaintiff's theory in this case would go far toward imposing absolute liability on manufacturers for all product-related injuries. A manufacturer need not incorporate into his product safety features that render the product incapable of performing some or all of the very functions creating its public demand. Plaintiff was entitled to a reasonably safe product, not an unreasonably safe product.

As we concluded in the discussion on strict liability, equipping the saw with a removable blade guard assembly was a manifestly reasonable melding of utility and safety. On the evidence contained in this record, reasonable men could not conclude that Oliver Machinery Company was negligent in designing an unreasonably dangerous saw.

## B. *Negligent Failure To Warn*

■ The universally recognized duty of a manufacturer to warn of dangers associated with the use of his product does not attach, according to the great weight of authority, when the danger is "open and obvious" or the party to be warned is already aware of the danger. *See, e. g., Martinez v. Dixie Carriers, Inc.,* 529 F.2d 457, 463–65 (5th Cir. 1976); *Ward v. Hobart Mfg. Co.,* 450 F.2d 1176, 1188–89 (5th Cir. 1971); Annot., 76 A.L.R.2d 9 (1961). *See also* W. Prosser, Handbook of the Law of Torts 649 (4th ed. 1971) ("[T]here is no usual duty to warn the

purchaser that a knife or axe will cut . . . .."). This understanding of the manufacturer's duty to warn is expressed in the Restatement (Second) of Torts [7] and has been applied by at least one Texas court. *See Kirby Lumber Corp. v. Murphy,* 271 S.W.2d 672, 678 (Tex.Civ.App.1954) ("[Plaintiff] was in possession of full information as to the dangerous condition of the load of the logs . . . and it was not necessary for [defendant] to inform him of the dangerous character of the load, since he already knew of it."); *cf. Big Three Welding Equip. Co. v. Roberts,* 399 S.W.2d 912 (Tex.Civ.App.1966) (because plaintiff was unaware of unsafe condition of injury-causing machine, defendant, lessor of machine, held liable for negligent failure to warn) (writ ref'd n. r. e.).

As we concluded earlier, the danger posed by defendant's product was not only obvious but was known to and appreciated by plaintiff. We have likewise previously disposed of plaintiff's contention that the saw should have carried a warning that informed users of the existence of a blade guard attachment.

## Conclusion

As a result of his unfortunate accident, Curtis Hagans has suffered a serious, permanent physical injury, an injury that arouses in us, no less than in the jury, a deep sense of sympathy. Our recognition, however, that one of the parties has the powerful influence of sympathy on his side prompts us to scrutinize the record all the

---

7. One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

   (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
   (b) *has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition,* and
   (c) fails to exercise reasonable care to inform them of its dangerous condition or of

the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388 (1965) (emphasis added), *quoted with approval in Eddleman v. Scalco,* 484 S.W.2d 122, 126 (Tex. Civ.App.1972) (writ ref'd n. r. e.); *Big Three Welding Equip. Co.,* 399 S.W.2d 912, 916 (Tex. Civ.App.1966) (writ ref'd n. r. e.); *Kirby Lumber Corp. v. Murphy,* 271 S.W.2d 672, 678 (Tex. Civ.App.1954). Comment k to this provision adds that warning of a product's defects is unnecessary where the dangerous condition is one "which a mere casual looking over will disclose" or where the supplier of the product has "reason to believe that those who will use it will have such special experience as will enable them to perceive the danger . . . ."

more closely, for only the most naive could deny that compassion, one of the strongest and most admirable human emotions, can sometimes cloud a jury's perception of the evidence and facts presented and lead it to hold liable for legally cognizable wrongs one who has committed none. The tendency of sympathetic jurors, though well-intentioned, to confuse liability with ability to bear loss forms the basis of the rule of law allowing the judge to deprive the jury of its right to decide against the defendant. That the jury has wrongfully held an innocent defendant liable is not lightly to be assumed however; only "[i]f the facts and inferences point so strongly and overwhelming in favor of [defendant] that the Court believes that reasonable men could not arrive at a contrary verdict" may a motion for directed verdict or judgment notwithstanding the verdict be granted in favor of defendant. *Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir. 1969). The record before us leads inescapably to the conclusion that this was such a case.

REVERSED.