764 F.2d 1092
 Prod.Liab.Rep.(CCH)P 10,585
David R. HORAK and Deborah Horak, Plaintiffs-Appellants,
v.
PULLMAN, INC., et al., Defendants,
Atchison, Topeka and Santa Fe Railroad, Defendant-Appellee,
and
AMERICAN CAR FOUNDRY CO., etc., Defendant-Third Party
Plaintiff-Appellee-Appellant,
v.
KEYSTONE RAILWAY EQUIPMENT CO., Third-Party Defendant-Appellee.
 No. 83-1884.
 United States Court of Appeals,
Fifth Circuit.
 July 5, 1985.
 
 Chapman, Reese & Wiley, Foster Reese, III, Carlyle H. Chapman, Jr., Dallas, Tex., for Horak.
 Donald E. Herrman, Fort Worth, Tex., for Atchison Topeka and Santa Fe R.R.
 Kevin J. Keith, C. Edward Fowler, Jr., Barbara Pile, Dallas, Tex., for American Car Foundry Co.
 David W. Townend, Dallas, Tex., for Keystone Ry.
 Appeals from the United States District Court for the Northern District of Texas.
 Before JOHNSON, JOLLY, and HILL, Circuit Judges.
 JOHNSON, Circuit Judge:
 
 
 1
 David and Deborah Horak appeal from the judgment of the district court in favor of the defendants in this diversity action based on allegations of negligence and products liability in which David and Deborah Horak sought damages for injuries David Horak (Horak) sustained as he attempted to open a gravity outlet gate on a railroad hopper car. On appeal, the Horaks contend that the district court erred when it granted directed verdicts in favor of defendants American Car Foundry Company (ACF) and Keystone Railway Equipment Company (Keystone)[1] on the Horaks' claims of strict liability based on inadequate warnings and negligent failure to warn. For the reasons stated below, the judgment of the district court is affirmed.[2]I. BACKGROUND
 
 
 2
 David Horak allegedly sustained a back injury on September 5, 1979, while he was using a six-foot long, thirty-pound pry bar to pry open a gravity outlet gate affixed to the bottom of a railroad car. At the time of the incident, Horak was employed as a forming attendant at the Owens-Corning Fiberglas Company (Owens-Corning) plant in Waxahachie, Texas. Opening hopper car outlet gates at Owens-Corning is normally the responsibility of the furnace tender but the forming attendant is required to assist in those situations when the furnace tender is unable to accomplish the job alone. As a forming attendant, Horak assisted in the opening of a gravity outlet gate once or twice a month. Horak alleges that he has suffered from severe pain since the accident.
 
 
 3
 Horak and his wife brought this action to recover for damages incurred as a result of the injuries Horak suffered. The Horaks sued the Atchison, Topeka and Santa Fe Railroad Company (Santa Fe), the owner of the railroad hopper car, and ACF, the manufacturer of the railroad car.[3] ACF and Santa Fe filed third party actions against Keystone, the manufacturer of the outlet gate involved. The Horaks' claims were founded on theories of negligence and strict liability with respect to the design and manufacture of the railroad car and gate and the alleged failure to warn of the dangers of the gravity outlet gate.
 
 
 4
 ACF and Keystone made timely motions for directed verdict with respect to the Horaks' claims of strict liability and negligence as a result of an alleged failure to provide adequate warnings or instructions. The district court granted those motions, and the Horaks appeal. The district court also granted similar motions for directed verdict regarding the Horaks' claim of defective manufacture. The Horaks do not appeal that decision. The trial proceeded with respect to the remaining issue of defective design. The case was submitted to the jury on special interrogatories, and the jury found that the gravity outlet gate was not defectively designed and that the incorporation of the gate into the railroad car was not unreasonably dangerous. The Horaks do not appeal these findings.
 
 
 5
 On appeal, the Horaks contend that the district court erred in granting directed verdicts in favor of ACF and Keystone on the failure to warn issues. This Court concludes that the district court did not err in granting the directed verdicts in favor of ACF and Keystone on the failure to warn issues in this case. Consequently, the judgment of the district court is affirmed.
 
 II. DISCUSSION
 
 6
 The district court granted the motions of Keystone and ACF for directed verdicts on the Horaks' claims for negligent failure to warn and strict liability based on inadequate warnings. In reaching its conclusion, the district court stated:
 
 
 7
 [A]s argued by the Defendants Keystone and ACF ..., directed verdict[s] must be given as to the plaintiff's failure-to-warn claims of both strict liability and negligence because there is no evidence that a failure to warn was either a producing or proximate cause of the plaintiff's injury in this case.
 
 
 8
 Record Vol. XIV at 1267. This Court agrees.
 
 
 9
 In reviewing a directed verdict, even in diversity cases, this Court applies the following standard:
 
 
 10
 On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence--not just that evidence which supports the non-mover's case--but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.
 
 
 11
 Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969) (en banc); Hagan v. EZ Manufacturing Co., 674 F.2d 1047, 1051 (5th Cir.1982); Borel v. Fibreboard Paper Products Corp., 493 F.2d 1076, 1092 (5th Cir.1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). Whether evidence is sufficient to create an issue of fact for the jury is a question of law. Dun & Bradstreet, Inc. v. Miller, 398 F.2d 218, 224 (5th Cir.1968).
 
 
 12
 Texas law, however, governs the substantive aspects of this diversity case. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Whether applying the law of strict liability or negligence, Texas law requires that the defect or the negligent actions must be a producing and proximate cause of the accident. In the context of strict liability, the Texas Supreme Court stated:
 
 
 13
 [W]hen a product is defective due to inadequate labeling, "the aspect of the defendant's conduct that made the sale of the product unreasonably dangerous [i.e., the label] must be found to have contributed to the plaintiff's injury." This means that it is incumbent upon the plaintiff to secure a jury finding that the faulty labeling was a cause of the injury.
 
 
 14
 Technical Chemical Co. v. Jacobs, 480 S.W.2d 602, 605 (Tex.1972) (bracketed material in original) (quoting Keeton, Products Liability--Inadequacy of Information, 48 Texas L.Rev. 398, 413 (1970)). A similar showing must be made in negligence cases.
 
 
 15
 In this case, the district court found that the plaintiff had actual knowledge of the dangers this gravity gate posed to a user. The record establishes this knowledge. Horak testified that he only assisted in opening the gates when the furnace tender was unable to open the gate alone, Record Vol. VIII at 214, 236, 324; Record Vol. IX at 372, and that all the gates were difficult to open, Record Vol. IX at 372, 382, 384. Horak also testified that he was exerting maximum force when he attempted to pull the gate open, Record Vol. VIII at 311, and that he always used maximum force to open the gates, Record Vol. IX at 347. Horak acknowledged that pulling back on the bar to open the gate involved using his back; that pulling would create stress on his spine; and that the harder he pulled the greater the stress that would be created. Horak further acknowledged that the likelihood of injury would increase "[i]f someone didn't use their common sense and stop whenever they felt their limitation." Record Vol. IX at 391-93.
 
 
 16
 Moreover, the testimony was equally clear that any lack of instructions was not a producing cause of Horak's accident. It is clear from Horak's own testimony that Horak was instructed by Owens-Corning on how to open these gravity outlet gates, Record Vol. VIII at 319-20; that Horak agreed that the gate was a simple device and that one would not need much instruction regarding its use, Record Vol. VIII at 322-23; and Horak conceded that on the night in question he "knew what to do" regarding opening the gate and so he was not given any instructions, Record Vol. IX at 340. Horak also testified that he did not look at the railroad car the night of his injury, and that he did not read anything on the side of the car, Record Vol. IX at 343. Horak denied any knowledge of the availability of mechanical assist devices, but he also adamantly contended that he did not have the responsibility to decide on the procedure used to open the gate. Record Vol. IX at 349, 362, 368. Horak's lack of authority to determine to use a mechanical assist device was confirmed by Ira Fuller, the lead man, who testified that he and Everett, the furnace tender, had the authority to determine the procedures to be used, and that Horak did not have that authority. Record Vol. XIII at 1018, 1024, 1030. Fuller also testified that he and Everett knew of various mechanical assist devices that were available at Owens-Corning, and they made a conscious decision not to use them. Record Vol. XIII at 1018-19, 1023-24, 1025, 1030-31.
 
 
 17
 In light of the particular testimony in this case, the district court properly concluded that reasonable minds could not differ over the question of whether the alleged absence of warnings and instructions was the producing cause of the injuries Horak suffered. The evidence is clear and uncontradicted that Horak knew that excessive force might be required to open a hopper car, and that use of such force could pose a threat of injury to him. Moreover, the evidence was equally conclusive that any instructions would have been unavailing. Thus, the failure to warn could not have been a producing cause of Horak's accident. As a part of the plaintiff's prima facie case, the plaintiff bears the burden of demonstrating that the absence of warnings was a producing cause of the accident. Technical Chemical, 480 S.W.2d at 605. Cf. EZ Manufacturing Co., 674 F.2d at 1052 (applying Oklahoma law). Horak did not make this showing.
 
 
 18
 Horak relies heavily on Pavlides v. Galveston Yacht Basin, Inc., 727 F.2d 330, 340 (5th Cir.1984), in which this Court held that once the plaintiff has made out a prima facie case of "failure to warn" of a hazard, the defendant bears the burden of demonstrating that the plaintiff had actual knowledge of the risk posed by the product and that such a showing is in the nature of an affirmative defense. In that case, this Court remanded the case to the district court for a determination of whether the plaintiffs indeed had actual knowledge. Generally, whether the plaintiff has actual knowledge of the risks posed by a product presents a fact question for the jury. But the issue in the instant case is whether the evidence, with all the facts and reasonable inferences taken most favorably to the plaintiffs, points so overwhelmingly in favor of the defendants that the trial court could properly have concluded that reasonable minds could not differ in concluding that the lack of warnings or instructions was not a producing cause of Horak's injuries. Boeing, 411 F.2d at 374; Cf. Brown v. Link Belt Division of FMC Corp., 666 F.2d 110, 114 (5th Cir.1982) (applying Louisiana law). In the instant case, the district court did not err in granting directed verdicts because the testimony conclusively established that the factual basis for the affirmative defense was not in dispute.
 
 
 19
 It is in part because of this failure to demonstrate a causal connection between the injuries sustained and the lack of warnings that courts subscribe to the generally held view that there is no duty to warn when the party to be warned has actual knowledge of the risks posed by the product. This is equally true in negligence cases, see, e.g., Hagans v. Oliver Machinery Co., 576 F.2d 97, 104 (5th Cir.1978) (applying Texas law), Martinez v. Dixie Carriers, Inc., 529 F.2d 457, 464 (5th Cir.1976) (applying admiralty law), as well as cases asserting strict liability, see, e.g., Scott v. White Trucks, 699 F.2d 714, 724 (5th Cir.1983) (applying Louisiana law); Oliver Machinery, 576 F.2d at 102; Martinez, 529 F.2d at 465-67. As noted by this Court, "Implicit, ... in the duty to warn is the requirement that the user be ignorant of the dangers warned against." Oliver Machinery, 576 F.2d at 102 (footnote and citations omitted).
 
 
 20
 This Court notes briefly the limits of this opinion. This case is decided on principles of causation and we do not decide whether a warning might be required in a similar case, but one where there is a lack of knowledge on the part of the plaintiff. This Court holds only that even if there was a duty to warn, the absence of warnings was not a producing cause of Horak's accident since Horak had knowledge of the information to be conveyed by the warning.
 
 III. CONCLUSION
 
 21
 For the reasons stated above, the judgment of the district court is
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Horak did not directly sue Keystone. In Keystone's posture as third party defendant, Keystone moved for a directed verdict on the same claims in a derivative fashion. Keystone now claims that Horak does not have standing to challenge the directed verdict in favor of it. This Court need not reach this contention because this Court's disposition of Horak's claims against ACF dispose of similar claims against Keystone. The district court decided both motions for directed verdict jointly, and we do also
 
 
 [2]
 The Horaks also contend that the district court erred in granting a directed verdict in favor of the defendant Atchison, Topeka & Santa Fe Railroad Company. This Court need not separately address that issue on appeal because our holding in this case also disposes of any claim against Atchison, Topeka & Santa Fe Railroad Company. The Horaks withdrew their negligence claim against Santa Fe, and the only theories of liability asserted against Santa Fe were claims for defective design and failure to warn. The jury concluded that the outlet gate was not defectively designed and that incorporation of the gate into the railroad car was not unreasonably dangerous. Horak does not appeal those findings. In addition, this Court's conclusion that any failure to warn was not a producing cause of Horak's injuries applies equally to any warning that Horak contends should have been given by Santa Fe. Consequently, the judgment of the district court granting a directed verdict in favor of Santa Fe is likewise affirmed by this decision
 In addition, the defendants Santa Fe and ACF filed third party complaints against Keystone and cross actions against each other for indemnity and contribution. Keystone reciprocated with cross actions against both Santa Fe and ACF. ACF appeals the district court's conclusions on the indemnity and contribution issues. Because this Court affirms the district court's judgment denying liability, this Court need not reach those issues.
 
 
 [3]
 The Horaks originally filed this negligence and products liability action against Pullman, Inc., the Atchison, Topeka, and Santa Fe Railroad Company (Santa Fe), and Missouri-Kansas-Texas Railway Company (M-K-T), the railroad that delivered the car to the Owens-Corning plant. It was eventually determined that Pullman had no involvement in the occurrences and Pullman was dismissed through an amended pleading which added ACF. M-K-T's motion for summary judgment was granted prior to trial and M-K-T was dismissed from the action